**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Case 0:25-cr-00228-001 (LMP)

---

United States of America,

                Plaintiff,

vs.

Ronnie Williams
A/K/A Michael Gibson,

                Defendant.

                      **DEFENDANT'S**
                **SENTENCING MEMORANDUM**

---

## INTRODUCTION

Defendant Ronnie Williams, through counsel, respectfully submits the following position memorandum regarding sentencing pursuant to U.S.S.G. §6A1.2 and Local Rule 83.10. Mr. Williams concurs with the facts as outlined in the Presentence Investigation Report ("PSR") ¶¶ 6-9. For the reasons set forth below, Mr. Williams respectfully requests the Court not impose a custodial sentence.

## SECTION 3553 SENTENCING FACTORS

18 U.S.C. §3553 governs and guides the Court's sentencing determination. See *Gall v. United States*, 552 U.S. 38, 46 (2007) (clarifying that 18 U.S.C. §3553(a) is the controlling law of sentencing, and the Sentencing Guidelines are merely advisory). Section 3553(a) directs that the Court should impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in that section. Ultimately, the Court must "consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes  magnify,the crime and punishment to ensue." *Gall*, 552 U.S. at 46.

## I.    THE GUIDELINES ARE NOT PRESUMPTIVELY REASONABLE

The sentencing guidelines are advisory and the Court, in its wisdom and discretion, may

sentence as it deems fit in accordance with the circumstances. *United States v. Booker*, 543 U.S. 220, 245 (2005). The Guidelines are "effectively advisory," and a court is permitted "to tailor the sentence in light of the statutory concerns" listed in 18 U.S.C. § 3553. *Id*. "Guidelines are not only **not** mandatory on sentencing courts; they are also **not** to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350 (2009) (emphasis added).

## II.   THE COURT SHOULD VARY DOWNWARD BASED ON MR. WILLIAMS' OVERSTATED CRIMINAL HISTORY

Although Mr. Williams has total criminal history score of 7 and a criminal history category of IV, his past offenses (applicable and contributing to his present criminal history score) include some relatively benign misconduct, compared to the instant offense. Mr. Williams was convicted in 2011 (13 years ago) of misdemeanor theft of services for ducking under a turnstile without paying for transportation fare. Mr. Williams was also convicted in 2011 for felony retail theft where he stole merchandise from a retailer. The underlying conduct was shoplifting, usually a misdemeanor level offense, but was elevated to a felony based on the total loss amount to the retailer. Those two convictions alone contribute 4 of 7 points to Mr. Williams' overall criminal history. Generally, "[r]ecidivism rates rise as criminal history points increase and as CHCs increase." U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (May 2004). [1] However, the report found "no correlation between recidivism and guidelines" offense levels. Whether an offender has a low or high guideline offense level, recidivism rates are similar." *Id*. at P.15.

The Sentencing Commission designated § 4A1.3 to address situations whether a defendant's history of traffic infractions and other relatively minor convictions place the defendant

---

[1] This report is available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf.

in a criminal history category usually reserved for those with substantially more serious criminal histories. A departure may be warranted based on a consideration of factors relevant to determine whether the PSR calculation significantly over-represents a defendant's criminal history or the likelihood that the defendant will commit further crimes. See § 4A1.3. Considering only Mr. Williams' 2006 felony conviction for aggravated battery, his criminal history score would be 3 and his criminal history category II, placing his guidelines range 8-14 months imprisonment.

## III.   A VARIANCE IS WARRANTED BASED ON THE SENTENCING FACTORS

Mr. Williams moves for a variance from the calculated guidelines range pursuant to 18 U.S.C. § 3553(a). The District Court may consider the specific circumstances of both the defendant and the crime in determining the proper sentence and decide whether a downward variance from the sentencing guidelines is appropriate. *United States v. Rivera*, 439 F.3d 446, 448 (8th Cir. 2006). This is to ensure that sentences are "sufficient, but not greater than necessary," to effectuate the purpose of sentencing. 18 U.S.C. § 3553(a). A variance is a sentence which is imposed outside of the applicable guideline range, based on the statutory sentencing factors found in 18 U.S.C § 3553(a). As explained by the Ninth Circuit:

> A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. §3553(a).

*United States v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012) (citing *United States v. Cruz-Perez*, 567 F.3d 1142, 1146 (9th Cir. 2009)).

### a.  Defendant's Characteristics

The majority of Mr. Williams' criminal history include theft and drug-related offenses.

Any defendant's decision to reoffend is shaped by psychological, social, and economic pressures; there is not a one-size-fits-all answer for recidivism. Difficulties in securing legitimate employment are often compounded for those with criminal records. A criminal history often disqualifies someone from jobs, pushing them toward alternative means of income. Having a record affects more than a person's ability to earn money; there is a stigma associated with criminal records contributing to feeling isolated, disenfranchised, hopeless, and with few options beyond reoffending. In short, a lack of economic opportunity often creates a revolving door of criminal offenses. While this is not a justification, it provides context to help understand how a defendant came to stand before the Court.

### b. Deterrence and Public Protection

Empirical evidence concludes there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. See Andrew von Hirsch et al., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, Purposes and Functions of Sentencing, 34 Crime and Justice: A Review of Research 28- 29 (2006). ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); Stephen Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate

the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (variations in sentence length "have no detectable effect on rates of re-arrest").

The U.S. Sentencing Commission found "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." United States Sentencing Commission, Measuring Recidivism: The Criminal History. As a practical matter, a sentence of *any* duration is significant for any human being. There has already been strain upon Mr. Williams while this case remained pending. The stress, anguish, fearfulness, and anxiety derived from not knowing one's fate – especially the prospect of being separated from one's family – cannot fully be understood by a human being until they have directly experienced it. Fear can cripple a person, manifesting in mental health erosion and sometimes physical complications as a result. Despite these worries, Mr. Williams applied himself in positive ways, continuing to search for employment until he was hired full-time by Interstate Security Services on October 28, 2025. Most, if not all, of Mr. Williams' offenses stem from financial hardships, homelessness, or both. The current offense is no exception. Mr. Williams was presented an opportunity to earn money, and he took it. While it was a poor decision, the motivation is easy to understand. Now having a steady job provides hope, respect, and positivity for Mr. Williams. It is a source of pride he can build on, and something that will aid in his journey of staying out of the criminal justice system.

### c. Alternative Sentencing Options Beyond Prison

The Sentencing Guidelines outline several options for incarceration alternatives, including home detention and community service. These options are sometimes viewed as insufficiently punitive, but such a characterization should be weighed against the specific defendant. Sentencing Mr. Williams to home confinement and/or community service accomplishes several punitive,

5

deterrence, and rehabilitative goals. It orders Mr. Williams to restrict his current way of life, limiting his activities to essentials like work, church, and medical appointments. Community service allows Mr. Williams to give back to the community he wronged in a meaningful way.

Further, Mr. Williams has been on pretrial release with supervision since July 8, 2025. He has had no violations, remained in compliance with all court orders including maintaining regular contact with his supervising officer, and now has full-time employment.

### CONCLUSION

Mr. Williams therefore respectfully requests the Court grant a downward variance and impose an alternative to a custodial sentence – whether it is home detention, community service, or a combination thereof. Such a sentence is *sufficient* but not greater than necessary to comply with the purposes set forth in Section 3553. It allows Mr. Williams to continue his current, positive trajectory, and maintain the employment he worked so hard to obtain.

Respectfully submitted,

Dated: November 4, 2025                    **Keyser Law, P.A.**

/s/ Christopher Keyser
Christopher Keyser (0389361)
400 South Fourth Street, Suite 310M
Minneapolis, MN 55415
Phone: (612) 338-5007
Fax: (612) 454-2775
Email: chris@keyserdefense.com

*CJA Counsel for Mr. Williams*